[Civ. No. 2726. Third Appellate District.—June 11, 1924.]

ALICE G. WATTON, as Administratrix, etc., Appellant, v. COLONIAL AMUSEMENT SYNDICATE (a Corporation), et al., Respondents.

[Civ. No. 2727. Third Appellate District.—June 11, 1924.]

ALICE G. WATTON, as Administratrix, etc., Appellant, v. COLONIAL AMUSEMENT SYNDICATE (a Corporation), et al., Respondents.

[1] CORPORATIONS — ACCOUNTING — PLEADING — MONEY HAD AND RECEIVED.—In these actions by the administratrix of the estate of a deceased corporate stockholder against the corporation and the surviving stockholders "for and on account of money had and received" as the proceeds of the operation of a certain theater and the lease of the property thereof, and for moneys deposited in a bank and belonging to the corporation and the deceased, inasmuch as there was no semblance of an attempt to allege fraud or deceit, and there was no allegation that deceased was a stockholder in the corporation, plaintiff was not entitled to go into an accounting of the affairs of the corporation.

[2] ID.—OWNERSHIP OF LEASE—SUBLETTING CORPORATIONS.—RIGHTS OF NOMINAL LESSEES.—In such action, it having been shown that, although the lease to the premises wherein the sole business of the defendant corporation was conducted was executed to the deceased and one of the defendant stockholders individually (each of whom owned substantially one-half the stock of said corporation) and contained a clause against subletting, said nominal lessees as individuals never did use the leased premises, that the premises were leased for, and at all times were used for, the business of said corporation, and that at all times said nominal lessees intended the

---

1.  See 6 Cal. Jur. 856; 7 R. C. L. 318.

premises to be used for no other purpose, the subletting of said premises by said corporation did not create an obligation to the deceased or his estate for one-half the rentals under the sublease.

(1) 14a **C. J.**, p. 814, sec. 2925.   (2) 14 **C. J.**, p. 868, sec. 1325 (Anno.).

APPEALS from judgments of the Superior Court of San Joaquin County. J. A. Plummer, Judge. Affirmed.

The facts are stated in the opinion of the court.

A. H. Carpenter for Appellant.

Case & Forslund for Respondents.

WEYAND, J., *pro tem.*—By stipulation of the parties in open court, the above cases were tried together. Separate records of the cases are made, but the briefs filed are the same in both cases.

Both actions were begun on January 25, 1922. In substantially the same words, except as hereinafter disclosed, both complaints alleged that the Colonial Amusement Syndicate was a Nevada corporation, licensed to do business within California. That Norval L. Watton died on May 24, 1921, and that Alice G. Watton, his widow, was, after due proceedings, appointed the administratrix of his estate. That on divers times between the twenty-fourth day of May, 1921, and the eighth day of October, 1921, defendants received moneys, aggregating $20,000, for the use of Norval L. Watton, "in his lifetime," and since his death for the use and benefit of his estate. These moneys are alleged to have been received by defendants from the following sources, to wit: "for and on account of moneys had and received as the proceeds of the operation of the Colonial Theatre in the City of Stockton, and the lease of the property thereof, and for moneys deposited in bank belonging to said corporation, and deceased." Then follows a further allegation of a promise on the part of defendants to pay said Norval L. Watton, "in his lifetime" and a like promise to pay the administratrix, said sum. Further the complaint avers demands made for payment and refusal of payment by defendants.

In the second case above named the complaint makes the same charges, except that an additional defendant, one E. G. Vollman, is added, and the sum of moneys charged to have been had and received was stated as being $6,000, and the time covered was from October 8, 1921, until the filing of the complaint.

Specific denial was made in each case, that any such sums, or any moneys whatsover, were received by defendants for the use of Watton or his estate.

The evidence disclosed that the Colonial Amusement Syndicate was a Nevada corporation, entitled to do business in the state of California and which was doing business at Stockton in the state of California, as a moving picture and vaudeville theater. The deceased, Watton, and the defendant Yori each owned substantially one-half of the stock of the said company; the defendant Burritt owning just sufficient stock of the company to qualify him as an officer of the corporation. Watton, up to the time of his death, was a director of the corporation and was manager of the theater at Stockton and which business was the only business of the said company. Watton, Yori and Burritt were the directors.

The line of questions, asked by plaintiff's attorney at the trial, indicated that it was plaintiff's claim that by false entries in the books of the corporation, and by sundry fraudulent acts of the defendants, Watton had been defrauded in his lifetime, and his estate had been prevented since his death from receiving moneys due the estate. These questions indicated that it was claimed moneys were, by fraudulent acts of the defendants, taken from Watton's estate, and for the uses and purposes of the defendants. In the second case, which has been called the "Vollman" case, and which designation we will adopt, to more briefly name this case, the testimony sought to be elicited by plaintiff indicates that the contention of plaintiff is to the same effect that the defendants Yori, Burritt, and Vollman, by fraud, and for their own advantage, after the death of Watton, procured a lease of the Colonial Theater, to be made by the company to Vollman. The questions indicate that the plaintiff claims part of the rentals paid by Vollman.

[1] There was not even the semblance of an attempt to allege fraud or deceit in either of the above actions. There was not as much as an allegation in the complaint that Wat-

ton, the deceased, was a stockholder in the Colonial Amusement Syndicate, and yet plaintiff claimed the right to go into an accounting of the affairs of the corporation and claimed the right to attack each and every act and thing done by the corporation, all upon the theory that if perchance moneys were wrongly credited by the corporation, or wrongfully paid out, all such matters could be litigated in an action for money had and received for the use of the said Watton, or, for the benefit of his estate. Under her complaints she had no such right.

The court did render judgment in favor of the plaintiff for $622.50, on account of a dividend declared by the Amusement Syndicate. The dividend referred to was in the sum of $2,171.48. Of this sum $1,082.98 was by resolution of the board of directors declared to be deceased's share thereof. This was the proper proportion of the whole dividend declared. According to the testimony of the company's secretary this dividend was just sufficient to "square" the account of Watton on the books. Two of the items charged against Watton were properly stricken from the list charged to Watton. These two items amounted to the sum allowed as a judgment in favor of plaintiff.

It is beyond our comprehension how plaintiff could expect to recover herein for money had and received under the circumstances of this case. No fraud or deceit was alleged. Not even an allegation that Watton was a stockholder. No dividend except the one above mentioned was declared to the stockholders.

[2] As to the allegation of the receipt of moneys from a lease of the properties of the company, the facts were clearly shown to be as follows: The lease of the theater building in Stockton, and wherein, during the lifetime of Watton, the sole business of the Colonial Amusement Syndicate was conducted, was made by one Wolf to Yori and Watton. This lease contained a clause against subletting. The evidence disclosed that Yori and Watton as individuals never did use the property leased. The evidence disclosed that it was leased for, and at all times was used for the business of the Colonial Amusement Company. It clearly appears that Yori and Watton at all times intended the leased premises to be used for no other purpose.

The evidence attempted to be introduced by the plaintiff in the Vollman case seemed to be directed to a claim on the part of plaintiff, that as this lease was made to Yori and Watton, as individuals, it remained their property, and as it contained a clause against subletting, the attempt to sublease by the Amusement Syndicate to Vollman created an obligation to Watton or his estate for one-half of the rentals. The trial judge rightly held that as the lease was taken for the company and was always considered as being property of the company by the deceased Watton during his lifetime, his estate could not now contend otherwise.

Our conclusions are that no error was committed by the trial court in the case. We feel that no authorities need be cited to sustain our conclusions.

The judgments in both actions are affirmed.

Finch, P. J., concurred.